FLYNN, WILLIAMS, WESTER & HALL, LLP
BARRY F. WESTER Bar No. 103588
MATTHEW D. BREKHUS Bar No. 119251
775 Baywood Drive, Suite 305
Petaluma, California 94954
Telephone: (707) 769-2990
Facsimile: (707) 769-2999
mbrekhus@fwwh.com

Attorneys for Plaintiff
NICHOLAS J. BARBAROTTO

SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRUCE D. CELEBREZZE Bar No. 102181
DENNIS G. ROLSTAD Bar No. 150006
MICHELLE Y. MCISAAC Bar No. 215294
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendants
HARTFORD LIFE INSURANCE COMPANY and
HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICHOLAS J. BARBAROTTO, individually and as Trustee of the NICHOLAS J. BARBAROTTO Revocable Living Trust Agreement dated November 2, 2005,

Plaintiff,

v.

HARTFORD LIFE INSURANCE COMPANY, a corporation doing business as THE HARTFORD and HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, and DOES 1-10,

Defendants.

CASE NO. C 06 1278 CRB

**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**

JUDGE: Hon. Charles R. Breyer
CTRM: 8, 19th Floor
DATE: June 23, 2006
TIME: 8:30 a.m.

Defendants Hartford Life Insurance Company and Hartford Life and Accident Insurance Company, and plaintiff Nicholas Barbarotto ("Plaintiff"), jointly submit this Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

## DESCRIPTION OF THE CASE

**1. A brief description of the events underlying the action:**

This is an action for benefits under two accidental death and dismemberment group insurance policies, issued to the State Bar of California and Attorneys Group Insurance Trust ("the Policies") by Hartford Life Insurance Company ("Hartford").[1] Plaintiff Nicholas Barbarotto was the husband of the decedent Tamara Barbarotto. Tamara Barbarotto died on October 18, 2002. Plaintiff submitted claims for benefits under both Policies asserting that his wife died as a result of injuries she sustained following an accidental fall on July 2, 2002. Plaintiff claims that his wife fractured her right fibula and tibia which ultimately resulted in her sudden death due to a blood clot in her lung. No autopsy was performed.

Tamara's medical records establish that at the time of her fall she had diabetes, Raynaud's Disease, chronic obstructive pulmonary disease, degenerative osteoarthritic changes in multiple areas, and anemia. The records further state that she drank one Manhattan a day and since 1940 she smoked 2 packs of cigarettes a day. Following her fall, on September 11, 2002, Tamara was diagnosed with lung cancer. And on or about September 24, 2002, she was diagnosed with skin cancer. Tamara's death certificate states that her immediate cause of death was lung cancer with a two month interval between the onset of the condition and death. At the time of her death, Tamara was 79 years old.

Hartford denied both claims on grounds that the policies only covered losses caused by

[1] Plaintiff has named as defendants Hartford Life Insurance Company and Hartford Life and Accident Insurance Company, and refers to them collectively throughout his complaint as "The Hartford." However, "The Hartford" is merely a trade name used by several different insurance companies and service providers. Moreover, the accidental death and dismemberment policies at issue were issued to the State Bar of California and Attorneys Group Insurance Trust by Hartford Life Insurance Company. Thus, "Hartford," as used in this statement, refers solely to Hartford Life Insurance Company, as there is no contractual relationship between Hartford Life and Accident Insurance Company and Plaintiff.

accidents, and not sickness or disease. Hartford stated that the evidence did not support Plaintiff's position that death was the result of Tamara's fractured right tibia and fibula sustained in a fall, and instead was the result of lung cancer. This action followed.

Hartford contends that this action is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA statutes provide that a plan can be established and maintained by an employee organization, including any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan. (29 U.S.C. § 1002(4)). The decedent qualified for coverage under the Policies by virtue of her husband's occupational status (he is an attorney) and membership in employee associations, which established and maintained their own ERISA plans through which they offered accidental death and dismemberment benefits to members and their spouses.

**2. The principal factual issues which the parties dispute:**

a. The cause of Tamara Barbarotto's death;

b. Whether plaintiff participated in ERISA plans that were established and maintained by employee associations;

c. Whether plaintiff can sustain his burden to establish that Tamara Barbarotto's death was caused by an accident.

**3. The principal legal issues which the parties dispute:**

a. Whether there is a cognizable claim against Hartford Life and Accident Insurance Company, as there is no contractual relationship with Plaintiff;

b. Whether the Policies and this action are governed by ERISA;

c. Whether Plaintiff's state law claims are preempted by ERISA;

d. Whether a genuine dispute as to coverage exists to preclude a finding of bad faith and punitive damages as a matter of law.

**4. The other factual issues *[e.g. service of process, personal jurisdiction, subject matter jurisdiction or venue]* which remain unresolved:**

None at this time.

**5. The parties which have not been served and the reasons:**

None at this time.

**6. The additional parties which the below-specified parties intend to join:**

Not applicable.

**7. The following parties consent to assignment of this case to a United States Magistrate Judge for *[court or jury]* trial:**

The parties do not consent to assignment to a United States Magistrate Judge for trial.

## ALTERNATIVE DISPUTE RESOLUTION

**8. The parties request the following ADR process:**

The parties jointly request referral to a court-sponsored mediation, and have agreed to participate in the mediation prior to engaging in law and motion proceedings or formal discovery.

## DISCLOSURES

**9. The parties certify that they have made the following disclosures:**

During the FRCP 26(f) Conference of the Parties, it was agreed that the parties would make their respective Initial Disclosures pursuant to FRCP 26(a)(1) of the following:

Hartford will produce copies of the Policies and its claim files for Plaintiff's claims under both Policies.

Plaintiff will produce copies of the Policies, correspondence with Hartford and medical records.

## DISCOVERY

**10. The parties agree to the following discovery plan:**

Hartford contends that this action is subject to ERISA. If this action is governed by ERISA, discovery regarding the benefit decision is not warranted, as ERISA provides that the reviewing court may only consider the evidence that was before the plan administrator at the time the decision to deny benefits was made or affirmed. Mongeluzo v. Baxter Travenol Long Term Disability Plan, 46 F. 3d 938, 944 (9th Cir. 1995). Instead, the parties may only engage in

limited discovery concerning whether the policies are subject to ERISA. Hartford proposes that discovery deadlines be set only once the issue of ERISA jurisdiction is established. Moreover, the parties have agreed that even this limited discovery will begin only after participation in mediation, and that they will attempt to informally exchange documents prior to mediation to the extent possible.

Plaintiff contends that it will have little need for further discovery provided that Hartford produces claim files in its Initial Disclosure.

## MOTION SCHEDULE

**11. Motion filing deadline:**

Hartford anticipates initially filing a summary judgment motion on grounds of ERISA preemption, and thereafter filing a motion for summary judgment on the benefit claim. If ERISA is found not to apply, then Hartford anticipates filing a motion for summary adjudication of Plaintiff's bad faith and punitive damage claims. Hartford requests a motion filing deadline of February, 2007.

## TRIAL SCHEDULE

**12. The parties request a trial date as follows:**

July 2007.

**13. The parties expect that the trial will last for the following number of days:**

If ERISA applies, there is no right to a jury, and a trial, if any, would last one day.

If ERISA does not apply, the parties expect a 5-7 day trial.

## SIGNATURE AND CERTIFICATION BY LEAD TRIAL COUNSEL

Pursuant to Civil L.R. 16-12, each of the undersigned certifies that he or she has read the brochure entitled "Dispute Resolution Procedures in the Northern District of California," discussed the available dispute resolution options provided by the court and private entities and has considered whether this case might benefit from any of the available dispute resolution options.

DATED: June 20, 2006

FLYNN, WILLIAMS, WESTER & HALL, LLP

By: s/Matthew D. Brekhus
BARRY F. WESTER
MATTHEW D. BREKHUS
Attorneys for Plaintiff
NICHOLAS J. BARBAROTTO

DATED: June 20, 2006

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: s/Dennis G. Rolstad
DENNIS G. ROLSTAD
MICHELLE Y. MCISAAC
Attorneys for Defendants
HARTFORD LIFE INSURANCE COMPANY and
HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

**CASE MANAGEMENT ORDER**

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this order.

DATED: ________________

_______________________________________
UNITED STATES DISTRICT JUDGE